# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

IN RE:                              )
                                    )
HICKORY RIDGE, LLC                  )   Case No. 07-1251
                                    )
         Debtor.                    )   Chapter 7

## MEMORANDUM OPINION

Branch Banking and Trust Company ("BB&T") seeks relief from the automatic stay of the Bankruptcy Code pursuant to 11 U.S.C. § 362(d)(1) to exercise its state law rights against real property belonging to Hickory Ridge. LLC.  George Van Wagner – a purported managing member and creditor of Hickory Ridge – objects to the stay relief motion and requests, through Hickory Ridge's substitute counsel, that this court convert Hickory Ridge's bankruptcy case from Chapter 7 to Chapter 11.

For the reasons stated herein, the court will grant BB&T stay relief and deny the motion to convert this case to one under Chapter 11.

## I. BACKGROUND

When Hickory Ridge filed its Chapter 7 bankruptcy case on September 24, 2007, Mr. Van Wagner signed the petition as managing member.  At the time, Mr. Van Wagner had a 50% ownership interest in Hickory Ridge.  Steven Crites owned 45% and the remaining 5% was held by Elizabeth Williams.  Robert Trumble was appointed as Hickory Ridge's Chapter 7 trustee.

On January 7, 2008, Mr. Trumble filed an application to employ Natalie J. Hoffman, a realtor, for the purpose of marketing and selling two parcels of real property belonging to Hickory Ridge.  One parcel consisted of about 71.3 acres and the other about 3.8 acres, both of which were approved for commercial development.  The court approved the application, over objection, on March 4, 2008.  Unfortunately, the marketing efforts of the Chapter 7 trustee and his professional did not produce any buyer for the properties willing to pay more than the secured debt on the

1

properties. Mr. Trumble stated that the highest offer he received was for $1.65 million, and that the potential purchasers generally valued the properties in the range of $15,000 per acre.

On December 2, 2009, BB&T – not having received any payment on its three notes secured by the 71.3 and 3.8 acre tracts since the summer of 2007 – moved for relief from the automatic stay. According to Bret Butler, a commercial loan officer at BB&T, as of April 16, 2010, Hickory Ridge owed $1,174,511.06, $547,081.39, and $207,413.68, on the three notes, totaling $1,929,006.13. In addition to BB&T's secured liens, the 71.3 and 3.8 acre tracts are also subject to other, purportedly junior liens. According to BB&T's stay relief motion, both parcels are encumbered by an note and deed of trust in favor of John W. Jenkins, Jr. and George Van Wagner securing an obligation in the stated principal amount of $1 million. Additionally, the property is encumbered by a note and deed of trust in favor of Mr. Jenkins, Todd Blickenstaff, and Arthur Dodson, securing an obligation in the stated principal amount of $500,000.00.

Meanwhile, Mr. Van Wagner filed his own Chapter 11 bankruptcy petition on March 28, 2008, which was converted to a case under Chapter 7 on July 1, 2009. In his personal bankruptcy case, Mr. Van Wagner has a pending motion to compel his Chapter 7 trustee, Thomas Fluharty, to abandon assets, including his ownership and management interest in Hickory Ridge.

## II. DISCUSSION

BB&T requests that the automatic stay of the Bankruptcy Code be lifted for cause under 11 U.S.C. § 362(d)(1) on the basis that: (1) no equity exists in the property, (2) its notes continue to accrue interest that is not being paid and its has been forced to advance funds to pay property taxes, and (3) Hickory Ridge's Chapter 7 trustee has been afforded about two years to market and sell the property without success. While maintaining that it is entitled to stay relief either in Chapter 7 or in Chapter 11, BB&T also objects to Mr. Van Wagner's and/or Hickory Ridge's request to convert the case to Chapter 11 on the basis that management authority for Hickory Ridge rests with Mr. Van Wagner's Chapter 7 trustee, who has not authorized the conversion.

**A.    Stay Relief**

Under either Chapter 7 or Chapter 11, BB&T has demonstrated that it is entitled to relief from the automatic stay to exercise its state law rights against the 71.3 and 3.8 acres tracts of real property belonging to Hickory Ridge.

Under § 362(d)(1) the automatic stay may be terminated "for cause, including the lack of adequate protection of an interest in property of such party in interest." Section 362(d)(1) does not define "cause," and "courts must determine when discretionary relief is appropriate on a case-by-case basis." *Claughton v. Mixson*, 33 F.3d 4, 5 (4th Cir. 1994). The party seeking relief under § 362(d)(1) is required to establish an initial showing of cause to lift the stay. *E.g.*, *In re Sonnax Indus.*, 907 F.2d 1280, 1285 (2d Cir. 1990) ("Section 362(d)(1) requires an initial showing of cause by the movant . . . ."). If that initial showing is made, the burden shifts to the debtor to prove adequate protection. 11 U.S.C. § 362(g); *see also* 3 *Collier on Bankruptcy* ¶ 362.10 (Alan N. Resnick & Henry J. Sommer eds. 15th ed. rev. 2010 ("Once the moving party makes this [initial] showing, the burden of going forward and the ultimate burden of persuasion shift to the party opposing the relief . . . ."). Section 361 of the Bankruptcy Code provides that adequate protection may be provided by cash payments, an additional or replacement lien, or other relief giving the creditor the "indubitable equivalent" of its interest.

In this case, BB&T has met its initial burden of showing cause to lift the automatic stay under § 362(d)(1). It has not been paid for over two years, it has had to advance funds to pay the delinquent property taxes of Hickory Ridge, and it has suffered the marketing of the properties by Hickory Ridge's Chapter 7 trustee for about two years. Hickory Ridge is not an operating business and is not generating any income. The value of the property is declining by virtue of BB&T's accruing interest, fees and charges on its three notes secured by the properties. Hickory Ridge has not suffered any risk of non-payment to BB&T; all the risks in this case have shifted to BB&T and Hickory Ridge's other secured lenders. This is inequitable.

In response to the stay relief motion, Mr. Van Wagner, as the purported managing member of Hickory Ridge, through counsel, did not offer to make any periodic payments to BB&T, did not offer replacement liens on unencumbered property, and did not demonstrate that an equity cushion existed. Instead, Mr. Van Wagner testified that should the court convert the case to one under Chapter 11, he could propose a plan of reorganization that would have a significant likelihood of success within a reasonable time. This future plan, as postulated by Mr. Van Wagner, would be, inferentially, an "indubitable equivalent" proposal under § 361 of the Bankruptcy Code and would thereby provide BB&T with adequate protection. *See, e.g.*, 3 *Collier on Bankruptcy* ¶ 362.10

3

(stating that once the creditor had proven cause to lift the stay, and the burden has shifted to the debtor, the debtor must "show that the collateral is not declining in value, the movant is adequately protected by periodic cash payments, an equity cushion, replacement liens or otherwise, or that there is a significant likelihood of a successful reorganization in a reasonable time."). In making the showing that a future plan of reorganization will provide BB&T adequate protection should stay relief be denied, Mr. Van Wagner is required to show that his plan "will result in the realization . . . of the indubitable equivalent of [the] collateral. . . ." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 377-78 (1988)

Mr. Van Wagner, however, did not present any *pro forma* plan of reorganization for Hickory Ridge. Instead, he stated that, if the court converted the case, he would engage in a new marketing strategy for the two remaining parcels of Hickory Ridge's real property – marketing it as a commercial development instead of as raw land. In his belief as a real estate investor with over 30 years experience, the properties could generate a price of about $40,000 - $45,000 per acre, or $3,379,500.[1] Mr. Van Wagner, however, was not qualified as an expert, and no appraisal of the property was offered. Likewise, no analysis of a potential distribution to creditors in a reorganization plan was offered, no marketing professionals appeared to testify, and after nearly two years of having Hickory Ridge's properties on the open market, no acceptable offer had been made. In short, Mr. Van Wagner's oral outline of a proposed Chapter 11 plan consists of doing little else than what Hickory Ridge's Chapter 7 trustee has already attempted to do – marketing and selling the properties. The court is not convinced, and was presented no evidence to the contrary, that a mere change in marketing strategy (if indeed marketing the property as a commercial development is a change) will result in offers being made to the estate in excess of the liens secured by the properties. Meanwhile, no payments are proposed to be made to BB&T.

---

[1] This value, $3,379,500, is less than the face value of all the liens secured by the two properties, about $3.4 million. Mr. Van Wagner testified, however, that he disputed the status or amount of all the secured liens on the properties, except those belonging to BB&T. Of course, Mr. Van Wagner's value estimates are far in excess of the offers actually received by Hickory Ridge's Chapter 7 trustee – the highest of which was $1.65 million. Based on actual offers received for the properties, the court does not believe that $3,379,500 is a credible assessment of the properties actual value as of the time of the April 16, 2010 hearing.

4

Consequently, whether this case remains in Chapter 7 or the court converts it to Chapter 11, "cause" exists under 11 U.S.C. § 362(d)(1) to lift the automatic stay as requested by BB&T.

**B.     Conversion**

Mr. Van Wagner, purporting to be the managing member of Hickory Ridge,[2] authorized and directed Hickory Ridge's substitute counsel, Arthur W. Boyce, to file a motion to convert the case from Chapter 7 to Chapter 11. BB&T objects to the conversion on the basis that Mr. Van Wagner is a dissociated member of Hickory Ridge, and any management authority he had belongs to Mr. Van Wagner's Chapter 7 trustee, Thomas Fluharty.

Under W. Va. Code § 31B-6-601(7) "[a] member is dissociated from a limited liability company upon the occurrence of . . . (7) The member's (i) becoming a debtor in bankruptcy . . . [or] (iii) . . . acquiescing in the appointment of a trustee . . . of the member or of all or substantially of the member's property . . . ."

Under this statute, Mr. Van Wagner's personal bankruptcy filing effected his disassociation from Hickory Ridge. Once disassociated, Mr. Van Wagner's "right to participate in the management and conduct of the company's business terminates . . . and the member ceases to be a member and is treated the same as a transferee of a member."  § 31B-6-603(b)(1); *see also Klingerman v. ExecuCorp, LLC (In re Klingerman)*, 388 B.R. 677, 678 (Bankr. E.D.N.C. 2008) (holding that under state law, the bankruptcy of a member of the limited liability company effected this disassociation; under "the Operating Agreement and North Carolina law of limited liability corporations, Mr.

---

[2] Several times during the April 16, 2010 hearing, either Mr. Van Wagner or Hickory Ridge's substitute counsel stated that this court has recognized Mr. Van Wagner as the managing member of Hickory Ridge. To the contrary, the court has never made a finding of fact in that regard. In the past, the court has referred to Mr. Van Wagner as the managing member of Hickory Ridge, but such statements were merely referencing Mr. Van Wagner's own assertions regarding his capacity; those statement were not findings of fact after a considered review of the record.

Moreover, Hickory Ridge's bankruptcy case has always been under Chapter 7. As such, Mr. Trumble, Hickory Ridge's Chapter 7 trustee, has been in control of the affairs of Hickory Ridge. After filing bankruptcy, which Mr. Van Wagner could authorize as managing member, no need existed for the management of Hickory Ridge's business and no previous need existed to adjudicate Mr. Van Wagner's authority to act as managing member of Hickory Ridge since Hickory Ridge's bankruptcy filing preceded the personal bankruptcy filing of Mr. Van Wagner.

5

Klingerman would not have standing to pursue dissolution [of the LLC]."); *In re Garrison-Ashburn, L.C.*, 253 B.R. 700, 704 (Bankr. E.D. Va. 2000) ("The effect on a member on becoming disassociated from a limited liability company is to divest the member of all rights as a member to participate in the management or operation of the company.").

Of course, under W. Va. Code § 31B-1-103(a), "all members of a limited liability company may enter into an operating agreement, which need not be in writing, to regulate the affairs of the company . . . and to govern relations among the members, managers and company." With the exception of certain non-waivable provisions – not applicable here – the West Virginia Limited Liability Act only governs relations among the members, managers and company "[t]o the extent the operating agreement does not otherwise provide." § 31B-1-103(a).

Nothing in Hickory Ridge's operating agreement, however, prevents Mr. Van Wagner's state law disassociation as a member of Hickory Ridge.[3] Regarding a member's bankruptcy, the operating agreement provides:

> 7.1 *Death, Resignation, Etcetera of a Member.* If a Member . . . becomes bankrupt . . . (the Incapacitated Member), the Company shall be dissolved unless the business of the Company is continued by the consent of a majority of interest of the remaining Members. If the business of the Company is continued pursuant to Article 8.1(A) of this Agreement, a majority of interest of the remaining Members shall elect either to: (i) permit the Incapacitated Member's successor-in-interest to continue as Assignee or substitute Member, or (ii) cause the Company to redeem the interest of the Incapacitated Member. . . .
> . . . .
> 8.1 *Dissolution.* . . . The Company shall be dissolved upon:
>   A.   The . . . bankruptcy . . . of a Member . . . except where the Members, other than the effected Member, vote unanimously to continue the business of the company.
>   B.   The filing by the Manager of any petition . . . seeking . . . reorganization . . . liquidation . . . or similar relief under the . . . federal bankruptcy act . . . .
> . . . .
> 8.2 *Continuation of Company.* In the event [of dissolution] of the Company pursuant

---

[3] Hickory Ridge's articles of organization provide that its operating agreement must be in writing and that no oral operating agreement is valid. This feature of the articles of organization effectively undercuts the contention of Hickory Ridge in its response (Document No. 174) that its operating agreement was orally modified to waive the statutory dissolution provisions.

>   to the events described in section 7.1(A)[4] above, the business and affairs of the Company shall not be discontinued and the Company shall remain in existence as a Limited Liability Company under the laws of the State of West Virginia, if the remaining Members unanimously agree to continue the company under this Agreement within 60 days of such event of [dissolution]."

(Exhibit 30).

Accordingly, no provision of the operating agreement waives the disassociation of a member when that member files a bankruptcy petition. Under § 7.1, a member's bankruptcy makes that member an Incapacitated Member, and the only stated options for the remaining members are to either redeem the interest of the Incapacitated Member or to allow the member's successor in interest – not the Incapacitated Member – to continue as an assignee or substitute member. Sections 8.1 and 8.2 provide for the dissolution of Hickory Ridge based on that bankruptcy filing unless the remaining members vote to continue its business. Consequently, nothing in Hickory Ridge's operating agreement waives the operation of W. Va. Code § 31B-601(7), and, under applicable state law, Mr. Van Wagner is a disassociated member of Hickory Ridge.

Regarding the application of federal bankruptcy law, however, when Mr. Van Wagner filed his March 28, 2008 bankruptcy petition he was the managing member of Hickory Ridge. Notwithstanding any prohibition or restriction under state law that would otherwise limit the transfer of Mr. Van Wagner's interest in Hickory Ridge or his management authority, all his interest in Hickory Ridge became property of his bankruptcy estate. *E.g.*, 11 U.S.C. §§ 541(a) (stating that the bankruptcy estate consists of, inter alia, "all legal or equitable interests of the debtor in property as of the commencement of the case . . . ."); § 541(c) ("[A]n interest of the debtor becomes property of the estate . . . notwithstanding any . . . applicable nonbankruptcy law – (A) that restricts or conditions transfer of such interest by the debtor, or (B) that is conditioned on . . . the commencement of a case under this title . . . ."); *Klingerman*, 388 B.R. at 679 (holding that all membership and management rights of a member filing bankruptcy passed to the bankruptcy estate notwithstanding applicable nonbankruptcy law that would prohibit that transfer); *Movitz v. Fiesta*

---

[4] The operating agreement does not contain a section 7.1(A). The court believes that this is a typographical error and that the proper reference is to section 8.1(A).

*Invs., LLC (In re Ehmann)*, 334 B.R. 437 (Bankr. D. Ariz. 2005) ("The effect of Code § 541(c) is not limited to 'economic' interests, a distinction that does not there appear. Rather, its effect is to preserve, for the benefit of debtor's creditors, all of the debtor's interests in property whether deemed economic or not, and to eliminate any contractual or statutory limitations that might otherwise apply on account of their transfer to a trustee in bankruptcy."), *withdrawn*, 337 B.R. 228 (Bankr. D. Ariz. 2006) (opinion withdrawn due to settlement).

Once a managing member's interest in a limited liability company becomes part of the bankruptcy estate, the trustee is free to use, sell or lease that property pursuant to 11 U.S.C. § 363(l), which provides that "the trustee may use, sell, or lease property . . . notwithstanding any provision in a contract, a lease, or applicable law that is conditioned on the insolvency or financial condition of the debtor . . . ."[5]

Consequently, not only is Mr. Van Wagner a dissociated member under state law, his 50% ownership interest in Hickory Ridge that he had when he filed his March 28, 2008 bankruptcy case became property of his Chapter 11 bankruptcy estate, subject to the control of his Chapter 7 trustee when he converted his case from Chapter 11 to Chapter 7 on July 1, 2009.

On March 25, 2010, Mr. Van Wagner did acquire, for himself, an additional 45% ownership interest in Hickory Ridge from Steven Crites. Mr. Crites, however, is not a managing member of Hickory Ridge, and is not a majority owner of Hickory Ridge. Under § 2.6 of Hickory Ridge's operating agreement, the consent of the holders of more than 50% of Hickory Ridge's ownership must consent to authorize the substitution of a new manager.

Therefore, the court finds that Mr. Van Wagner's 50% ownership interest, and his rights as a managing member, are currently controlled by his Chapter 7 trustee, Thomas Fluharty. At the time of the April 16, 2010 hearing on the motion to convert, Mr. Van Wagner did not have the authority to make management decisions for Hickory Ridge. Mr. Fluharty has not yet formally abandoned any

---

[5] In this case, Mr. Van Wagner's Chapter 7 trustee has not attempted to exercise any management authority over Hickory Ridge. The court expresses no opinion as to whether the trustee is entitled to exercise such control. *See, e.g.*, 11 U.S.C. § 365(c) (stating that the trustee may not assume an executory contract – potentially an operating agreement – if applicable law excuses a party, other than the debtor, from accepting performance from . . . an entity other than the debtor or debtor in possession . . . .").

interest in Hickory Ridge in Mr. Van Wagner's personal bankruptcy case. Contrary to the contentions of Mr. Van Wagner, any previous conduct or representations by Mr. Fluharty that he did not want to administer Mr. Van Wagner's interest in Hickory Ridge do not constitute an abandonment – abandonment must be express as required by 11 U.S.C. § 554 and Fed. R. Bankr. P. 6007. *See, e.g.*, *Wissman v. Pittsburgh Nat'l Bank*, 942 F.2d 867, 873 (4th Cir. 1991) (no informal abandonment); *In re FCX, Inc.*, 54 B.R. 833, 839 (Bankr. E.D.N.C. 1985) ("For a notice of abandonment . . . to be effective, it must identify the property to be abandoned . . . ."); 10 *Collier on Bankruptcy* ¶ 6007.02[d] (Alan N. Resnick & henry J. Sommer eds. 15th ed. rev. 2010) ("Other than for automatic abandonment under section 554(c), Rule 6007(a) sets forth the exclusive procedure by which the trustee or debtor in possession may abandon property. Informal or constructive abandonment is not effective."). Consequently, Hickory Ridge has not been authorized by its manager or members to convert its case to Chapter 11, and, therefore, cannot be a debtor in Chapter 11 pursuant to 11 U.S.C. § 706(d).[6]

### III. CONCLUSION

For the above-stated reasons, the court will enter a separate order that grants BB&T relief from the automatic stay and that denies Hickory Ridge's motion to convert its case from Chapter 7 to Chapter 11.[7]

---

[6] Section 706(d) of the Bankruptcy Code provides: "a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter."

[7] Because the court has denied Hickory Ridge's motion to convert based on the lack of corporate authority under 11 U.S.C. dd 706(d), the court need not address the objection of the Chapter 7 trustee to the conversion of the case based on bad faith.